# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN K. MCDONOUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:12-cv-00643** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

# I.  INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on August 24, 2010, alleging that he had been disabled since March 24, 2010, due to Crohn's disease.  *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 115, 148.  Plaintiff's application was denied both initially (TR 61) and upon reconsideration (TR 63).  Plaintiff subsequently requested (TR 73) and received (TR 84) a hearing.  Plaintiff's hearing was conducted on July 6, 2011, by Administrative Law Judge ("ALJ") Scott Shimer.  TR 28.  Plaintiff and vocational expert ("VE"), Rebecca Williams, appeared and testified.  *Id.*

On July 20, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 24. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since March 24, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairment: Crohn's disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine repetitive tasks, but no complex tasks; workplace changes should be gradual and infrequent;

2

no commercial driving; and occasional contact with co-
workers and the public.

6.      The claimant is unable to perform any past relevant work
(20 CFR 404.1565).

7.      The claimant was born on August 24, 1972 and was 37
years old, which is defined as a younger individual age 18-
49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is
able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the
determination of disability because using the Medical-
Vocational Rules as a framework supports a finding that
the claimant is "not disabled," whether or not the claimant
has transferable job skills (See SSR 82-41 and 20 CFR Part
404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work
experience, and residual functional capacity, there are jobs
that exist in significant numbers in the national economy
that the claimant can perform (20 CFR 404.1569 and
404.1569(a)).

11.    The claimant has not been under a disability, as defined in
the Social Security Act, from March 24, 2010, through the
date of this decision (20 CFR 404.1520(g)).

TR 19-23.

On July 25, 2011, Plaintiff timely filed a request for review of the hearing decision. TR

12. On May 30, 2012, the Appeals Council issued a letter declining to review the case (TR 1),

thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil

action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

3

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

4

273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which

5

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

_____

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) finding that Plaintiff's Crohn's disease neither met nor equaled Listing 5.07(A); (2) not considering the side effects of Plaintiff's medications on his ability to work; (3) finding that Plaintiff was noncompliant with his treatment, using this noncompliance as a basis for denying his claim, and failing to investigate all possible reasons for this alleged noncompliance;[3] (4) improperly discrediting Plaintiff without considering his explanations for this lack of treatment and the side effects from his medications;[4] and        (5) failing to properly consider the reasons for Plaintiff's noncompliance and the side effects of his medication when reaching the RFC determination.  Docket No. 16.  Accordingly,

---

[3] Plaintiff argues each of these points separately in his brief.  Because they are all related issues, the undersigned will discuss them together.

[4]  In Statements of Error (F) and (G), Plaintiff argues that the ALJ erred both in his credibility determination and in his RFC assessment.  Plaintiff's argument that the ALJ failed to consider the side effects of his medication in discrediting Plaintiff will be considered with Plaintiff's argument that the ALJ failed to properly consider his noncompliance in discrediting Plaintiff.  Plaintiff's argument that the ALJ's RFC determination was erroneous because the ALJ failed to consider his reasons for discontinuing Imuran and his medication side effects will be discussed separately.

7

Plaintiff maintains that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g).

Plaintiff also contends that there is new and material evidence that the ALJ did not have the opportunity to consider, such that this case should be remanded pursuant to sentence six of § 405(g). Docket No. 16. Sentence six of § 405(g) states as follows:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

8

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6ᵗʰ Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6ᵗʰ Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1.  Meeting or Equaling a Listing

Plaintiff contends that the ALJ erred in not finding that his Crohn's disease either meets or equals Listing 5.07(A).  Docket No. 16.  Specifically, Plaintiff maintains that Listing 5.07(A) describes "regional enteritis," which is a synonym for Crohn's disease, and that accordingly, the ALJ erred by failing to explain why Plaintiff's impairment did not meet or equal this Listing.  *Id.* Plaintiff further argues that the record is replete with objective findings of the other requirements of this Listing, including abdominal pain, distention, nausea, and vomiting.  *Id.*

Defendant responds that the ALJ properly found that Plaintiff's impairment did not meet or equal Listing 5.07(A).  Docket No. 19.  Specifically, Defendant argues that Listing 5.07(A) was removed from the Listing of Impairments on October 19, 2007, and Plaintiff did not apply for DIB until August 2010.  *Id.*, *citing* 72 FR 59398-01; 2007 WL 30322493 (F.R. October 19, 2007).  Defendant further contends that the ALJ was not obligated to state why Plaintiff's impairment did not meet a listing that did not exist under the regulations at the time he applied for DIB.  *Id.*

Plaintiff's contention that the ALJ erred in finding that Plaintiff's Crohn's disease did not meet or equal Listing 5.07(A) is unavailing.  As Defendant correctly notes, Listing 5.07(A) has not existed under the regulations since 2007, nearly three years prior to the date that Plaintiff

9

filed his application for DIB.

With regard to Listing 5.07 in its current form, the Code of Federal Regulations now reads:

> 5.07 *Short bowel syndrome (SBS)*, due to surgical resection of more than one-half of the small intestine, with dependence on daily parenteral nutrition via a central venous catheter (see 5.00F).

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 5.07.

As can be seen, the Regulations explicitly state that Listing 5.07 refers to "Short bowel syndrome," which is not an impairment alleged by Plaintiff.[5] Accordingly, the ALJ did not err in failing to state reasons why Plaintiff's impairment did not meet or equal Listing 5.07(A). Plaintiff's allegations of abdominal pain, distention, nausea, and vomiting are also inapposite to whether Plaintiff's impairment meets or equals a listing that is no longer in effect.

Because the listing Plaintiff avers he meets no longer existed at the time he filed his DIB application or had his hearing, the ALJ was not bound to discuss it; accordingly, Plaintiff's argument fails.

## 2.  Evaluation of the Side Effects from Plaintiff's Medication

Plaintiff contends that the ALJ failed to discuss or properly consider the side effects of his medications on his ability to work.  Docket No. 16.  Specifically, Plaintiff argues that the ALJ erred by failing to consider the side effects of the Prednisone and Methotrexate prescribed for Plaintiff's Crohn's disease.  *Id.*  Plaintiff maintains that the ALJ improperly failed to discuss the fact that "Methotrexate is not a drug that is prescribed lightly."  *Id.* at 8.

---

[5] The former Listing 5.07(A) was incorporated into Listing 5.06.  2007 WL 30322493 (F.R. October 19, 2007).  Because Plaintiff has not argued that his impairment meets or equals Listing 5.06, the undersigned will not discuss it.

10

Defendant responds that the ALJ did not err because there were no indications that Plaintiff had any side effects from the medications that the ALJ should have considered. Docket No. 19. Specifically, Defendant argues that Plaintiff merely asserted that Prednisone and Methotrexate had the potential to cause side effects, but nothing of record demonstrates that he actually experienced any of the potential side effects. *Id.* Defendant notes that Plaintiff denied having any side effects from these medications when the ALJ asked him about them at the hearing. *Id.* Defendant maintains that the record demonstrates that the ALJ specifically considered Plaintiff's side effects because he asked about Plaintiff's side effects during the administrative hearing and acknowledged that Plaintiff was taking Prednisone in his decision. *Id.*

Plaintiff correctly asserts that the ALJ must consider the side effects of any medication he takes to alleviate pain or other symptoms. *See* SSR 96-7p. Although Plaintiff lists the potential side effects of Prednisone and Methotrexate in his brief, he fails to demonstrate that he actually experienced any side effects from these medications. In fact, when asked at his hearing whether he was experiencing side effects from his current medication, Plaintiff responded, "Not currently."[6] TR 44. The fact that a medication has the *potential* to cause side effects is

_____

[6] Plaintiff's testimony is, in pertinent part, as follows:

Q        When – what medications are you on for the Crohn's
         Disease now?

A        I'm currently on prednisone and Methotrexate.

                              . . .

Q        . . . [O]n the medications you're taking now, is [*sic*] there
         any other side effects you're having?

11

irrelevant to the ALJ's disability analysis where Plaintiff does not actually suffer any side

effects. Similarly, it is unnecessary for the ALJ to consider the allegedly serious *potential* side

effects of Methotrexate, since Plaintiff did not actually experience any of those side effects.

Plaintiff had ample opportunity to allege side effects throughout the administrative

process. Because Plaintiff did not report any side effects resulting from his Prednisone or

Methotrexate, the ALJ was not required to discuss any non-alleged side effects from Prednisone

or Methotrexate on Plaintiff's ability to work. Plaintiff's argument fails.

### 3. Plaintiff's Noncompliance with Treatment

Plaintiff argues that the ALJ reached an erroneous conclusion by finding that he had been

voluntarily noncompliant with the treatment regimen prescribed by Dr. Price. Docket No. 16.

Specifically, Plaintiff contends that the ALJ failed to address the fact that he stopped taking

Imuran because he had developed basal cell cancer and failed to mention "the obvious

causational link between the long term use of the drug and [Plaintiff's] development of basal cell

cancer." *Id.* at 9. Plaintiff argues that Dr. Price's letters of July 19, 2011 and July 26, 2011

support a finding that Plaintiff had been compliant with treatment and had discontinued using

Imuran for medical reasons. Docket No. 16. Plaintiff also cites Dr. Pennington's letter as

evidence that Plaintiff made a good faith effort to remain compliant, even at the risk of damaging

his own health. *Id.*

Plaintiff additionally argues that "[t]he ALJ erred in using failure to follow prescribed

---

A       Not currently.

TR 42, 44.

treatment as a basis for denying [*sic*] Mr. McDonough's claim, inconsistent with SSR 82-59." *Id.* at 11. Specifically, Plaintiff contends that the ALJ neither considered the essential factors of refusal to follow treatment, nor asked any questions directed toward the issue of refusal to follow treatment at the hearing. Docket No. 16.

Finally, Plaintiff contends that "[t]he ALJ failed in her [*sic*] duty to investigate all possible reasons for the claimant's alleged noncompliance with a prescribed course of treatment." *Id.* at 12. Specifically, Plaintiff argues that the ALJ "curiously" failed to mention Dr. Price's follow up letters, which indicated the medical necessity of discontinuing his use of Imuran. *Id.* Plaintiff argues that the ALJ also failed to directly address the core reason for his alleged noncompliance and "clearly misses that point." *Id.* at 13.

Defendant responds that the ALJ did not, in fact, find that Plaintiff had been noncompliant with treatment. Docket No. 19. Specifically, Defendant contends that the ALJ discussed Dr. Price's August 30, 2010 treatment note indicating that Plaintiff had decided to discontinue his Imuran and try a holistic approach. *Id.* Defendant also contends that the ALJ noted that Plaintiff's treatment records indicated that his impairment had been well-controlled by medication and that once Plaintiff returned to taking his medication, he experienced fewer problems from his impairment. *Id.* Defendant maintains that the ALJ found that "'the claimant's condition should not limit his ability to perform some form of work activity as long as he is complainant [*sic*] with the medication prescribed to him by his treating physician.'" *Id.* at 14, *citing* TR 22. Defendant argues that the ALJ's discussion of the evidence does not amount to a finding that Plaintiff had been noncompliant with treatment, and Defendant notes that the ALJ did not make such a finding in his decision. Docket No. 19.

13

With regard to Plaintiff's contention that the ALJ failed to comply with SSR 82-59, Defendant responds that the ALJ did not use failure to follow prescribed treatment as a reason to deny his claim, so SSR 82-59 is inapplicable. *Id.* With respect to Plaintiff's contention that the ALJ failed to investigate all possible reasons for his noncompliance, Defendant again argues that the ALJ did not find that Plaintiff had been noncompliant with treatment. *Id.* Defendant also maintains that Plaintiff's testimony at his hearing validated the ALJ's understanding from Dr. Price's records that Plaintiff had briefly discontinued his medication and tried a holistic approach, but had since returned to taking prescription medication. *Id.*

As an initial matter, the ALJ in the case at bar did not find that Plaintiff had been noncompliant with treatment. As will be demonstrated below, although the ALJ reviewed the medical evidence and noted that the medical records indicated that Plaintiff had discontinued Imuran, a recitation of the medical evidence contained in the record is not the same as making a finding that Plaintiff had been noncompliant with treatment, and the ALJ made no such finding.

When reviewing the medical records pertinent to Plaintiff's discontinuation of Imuran, the ALJ stated:

> . . . On May 7, 2009, the Nashville Medical Group treatment notes
> indicated the claimant's condition continued to be treated
> effectively with the medication Imuran and he was doing well.
> However, on August 30, 2010, the claimant reported that he had a
> flare up of his Crohn's disease. Dr. Neil Price, the treating
> physician at the Nashville Medical Group, noted during the office
> visit that the claimant had decided to take a holistic approach to
> self-care and had been getting some supplements from a
> nutritionist therapist and he decided to discontinue his Imuran. . . .
>
> . . .
>
> . . . Dr. Johnson stated the claimant's flare ups appear to be
> infrequent. Further, the claimant's most recent flare up began

14

when he discontinued his medication in favor of herbal treatments.
Thus, Dr. Johnson concluded that the claimant's medical condition
is well managed when he maintains the prescribed regiment. . . .

. . .

. . . [T]he medical records showed that once the claimant stopped
taking a very successful maintenance drug on his own, he began to
experience problems with his condition. He began attempting to
treat his symptoms through what was called a holistic approach;
however, the claimant's own treating physician characterized these
holistic treatments as "dubious." The medical evidence further
noted that once the claimant was placed back on medication, he
had fewer problems with his Crohn's disease. Therefore, the
claimant's condition should not limit his ability to perform some
form of work activity as long as he is compliant with the
medication prescribed to him by his treating physician. . . .

TR 20-22, *referencing* TR 215, 221-22.

In contrast, the ALJ did not hold Plaintiff's discontinuation of Imuran against him in his

ultimate RFC finding.[7]  The ALJ explained:

The claimant alleged that stress causes his Crohn's disease to flare.
He successfully worked a collections job with this disease in the
past. This job involved at least some stress. Despite his alleged
difficulties with this job, he continued to perform this job until he
was laid off due to the work being sent overseas. However, giving
the claimant some benefit of the doubt, he is restricted to a job that
involved only simple routine repetitive tasks and detailed tasks, but

_____

[7] The ALJ ultimately made the following RFC finding:

After careful consideration of the entire record, the undersigned
finds that the claimant has the residual functional capacity to
perform a full range of work at all exertional levels but with the
following nonexertional limitations: simple routine repetitive
tasks, but no complex tasks; workplace changes should be gradual
and infrequent; no commercial driving; and occasional contact
with co-workers and the public.

TR 20.

15

not complex tasks. He is further restricted to a job that has only gradual and infrequent changes. These limitations accommodate the claimant's allegation of stress related flares with his impairment. The claimant is also restricted to occasional contact with co-workers and the general public. He is further restricted from a job that involves commercial driving. These restrictions further reduce any stress from the job. In addition, they accommodate the possibility of unscheduled bathroom breaks. The undersigned further notes that the vocational expert indicated that the jobs she named in response to the limitations posed by the administrative law judge would accommodate some unscheduled bathroom breaks. She indicated that as long as the work was completed, this would not be a problem.

TR 22, *referencing* TR 34, 44-45, 54-55.

As can be seen, even though the ALJ discussed medical records that indicated that Plaintiff had discontinued Imuran, he did not find that Plaintiff had been noncompliant, nor did he incorporate such a finding into his disability determination. Thus, Plaintiff's argument that the ALJ erred in finding him noncompliant with treatment is unavailing.

Plaintiff's contention that the ALJ failed to comply with SSR 82-59 is similarly unavailing. Plaintiff correctly notes that SSR 82-59 states that "[t]he claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment." SSR 82-59. Plaintiff fails to note, however, that SSR 82-59 relates to "the policy and . . . the criteria necessary for a *finding* of failure to follow prescribed treatment." *Id.* (emphasis added). As discussed above, in the instant case, the ALJ did not make a *finding* that Plaintiff had been noncompliant with treatment. TR 20-22. Accordingly, SSR 82-59 is inapplicable.

With regard to Plaintiff's argument that the ALJ erred by failing to investigate all possible reasons for his "noncompliance," the undersigned restates that the ALJ did not make a

16

finding of noncompliance. Accordingly, it was unnecessary for the ALJ to address any "reasons" for Plaintiff's "alleged noncompliance."

Additionally, contrary to Plaintiff's contention otherwise, the ALJ did, in fact, mention one of Dr. Price's letters and incorporate Dr. Price's medical opinion into his decision. TR 21. The ALJ explicitly stated:

> . . . Also, in a letter dated February 22, 2011, Dr. Price wrote that the claimant's condition is a chronic, recurrent problem for which he is taking steroids in combination with an immune system suppressor. However, Dr. Price pointed out that if the claimant went without effective medical treatment, he may have diarrhea, abdominal pain as well as fever and weight loss. Exhibit 8F.

TR 21, *referencing* TR 311.[8]

Plaintiff is also incorrect in his assertion that the ALJ failed to address the reasons for his "alleged noncompliance" at the hearing. In fact, at the hearing, the ALJ specifically asked Plaintiff about his reaction to Imuran, and Plaintiff testified, in pertinent part, as follows:

> Q        Okay. Any other issues besides for the Crohn's Disease, migraine headaches, possibly you said they kind of come and go, and the basal cell carcinoma?
>
> A        No. I want to mention during the time that I was actually doing okay was when I was on Imuran. They since had to take me off of that because I was getting the basal cell carcinomas.
>
> Q        Okay.
>
> A        And having the skin cancer.

---

[8] Plaintiff also finds the ALJ "curiously" omitted any mention of Dr. Price's July 19, 2011 letter. The ALJ's failure to mention this letter, however, is not curious at all. The record indicates that the ALJ received this letter on July 28, 2011, eight days after issuing his opinion. TR 312. The relevance of this letter will be discussed in greater detail below.

17

Q       And –

A       So, during the few months – go ahead, I'm sorry –

Q       Oh, well, no so they took you off of it because of some
        interaction with other medications or because they thought
        maybe it was –

A       No, because my body was reacting, my body was showing
        signs that it wasn't tolerating the medication.

TR 42-43.

        As can be seen, the ALJ properly reviewed the medical evidence of record and elicited

Plaintiff's own testimony regarding his discontinued use of Imuran. Ultimately, the ALJ did not

make a finding that Plaintiff had been noncompliant with treatment. Because the ALJ did not

find that Plaintiff was noncompliant with treatment, the ALJ did not use Plaintiff's alleged

noncompliance as a basis for denying his claim, and the ALJ did not need to perform a detailed

inquiry into the reasons for Plaintiff's alleged noncompliance. The ALJ's decision stands.

**4.  Plaintiff's Credibility**

        Plaintiff contends that in finding that his subjective complaints were not fully credible,

the ALJ failed to comply with SSR 96-7p. Docket No. 16. Specifically, Plaintiff argues that

SSR 96-7p required the ALJ to consider his explanations for lack of treatment before

discrediting him for failure to obtain treatment. *Id.* Plaintiff contends that in finding him not

credible, the ALJ misconstrued the record and omitted any discussion of why he discontinued

the Imuran treatments. *Id.* Plaintiff maintains that the record does not indicate that he

supplanted his Imuran treatments with a holistic approach, but rather that he supplemented it

with the use of vitamins and mineral supplements. *Id.* Plaintiff specifically argues that this error

led to an erroneous credibility finding. *Id.* Plaintiff further argues that the ALJ failed to

18

properly consider his side effects in his credibility determination.  *Id.*  Specifically, Plaintiff contends that "had the ALJ properly considered the factors enumerated hereinabove, she [*sic*] . . . would not have, as she [*sic*] did, mischaracterized [Plaintiff] as only 'partially credible.'" *Id.* at 16.  Plaintiff maintains that the side effects he experienced on Imuran were a valid medical reason for discontinuing the Imuran, and are evidenced in the medical record "beyond any degree of doubt." *Id.*

Defendant responds that Plaintiff fails to cite to the ALJ's decision showing that he discredited Plaintiff.  Docket No. 19.  Defendant specifically contends that the ALJ determined from the medical evidence that Plaintiff's symptoms were well-controlled with medication.  *Id.* Defendant argues that the ALJ found Plaintiff was partially credible regarding the severity of his Crohn's disease, which contradicts Plaintiff's allegation that the ALJ discredited him.  *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective complaints:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's allegations regarding the severity of his Crohn's disease were partially credible. TR 22. In making this determination, the ALJ considered Plaintiff's testimony and his subjective complaints, stating:

> At the hearing, the claimant testified that he has Crohn's disease. He indicated that his medical condition caused him to be away from his duties too much as a customer service representative. On several occasions, the claimant said his supervisors would say something to him about his absence from the telephones, but he explained to them that he had to go to the restroom due to his condition. However, the claimant testified that he was able to maintain his employment despite his condition because he had to

20

work. The claimant pointed out that he was employed as a customer service representative until he was laid off due to the employer moving jobs overseas. With respect to activities of daily living, the claimant said he relaxes most of the day to control his stress level. He testified that he never knows when his bowel movements will occur so he usually stays home and only leaves when he has to. On a bad day, the claimant said he is constipated and he cannot go to the bathroom. Then on other bad days, he said he may have too many bowel movements during the day and sometimes he does not make it to the bathroom. The claimant stated that he takes prescriptions and maintains a diet to control his Crohn's disease. Also, he indicated there has not been any surgical intervention at this point to treat his condition.

TR 21, *referencing* TR 37-39, 41, 44-48.

The ALJ then compared Plaintiff's testimony with the objective medical evidence. TR 21-22. Finding some inconsistencies, the ALJ stated:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Medical records demonstrated that the claimant was doing well when he was following the treatment plan set forth by his treating physician. Further, there was no evidence that the claimant experienced a great number of flare ups with his Crohn's disease. In addition, medical records indicated that the claimant on average experiences two bowel movements per day, which does not significantly limit his ability to perform work activity. However, the medical records showed that once the claimant stopped taking a very successful maintenance drug on his own, he began to experience problems with his condition. He began attempting to treat his symptoms through what was called a holistic approach; however, the claimant's own treating physician characterized these holistic treatments as "dubious." The medical evidence further noted that once the claimant was placed back on medication, he had fewer problems with his Crohn's disease. Therefore, the claimant's condition should not limit his ability to perform some

form of work activity as long as he is compliant with the
medication prescribed to him by his treating physician.  Thus, the
claimant's allegation regarding the severity of his Crohn's disease
is partially credible.

*Id.*, *referencing* TR 218-21.

Contrary to Plaintiff's contention, the ALJ did not discredit him because he discontinued using Imuran.  The ALJ found Plaintiff not fully credible because the medical evidence indicated that Plaintiff's condition was well-controlled by medication.  TR 21-22.  In evaluating credibility, SSR 96-7p mandates that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  SSR 96-7p.  As discussed above, however, the ALJ did not find that Plaintiff had been noncompliant with his Imuran treatments and the ALJ did not base his credibility finding on any such "noncompliance."

Plaintiff's contention that the ALJ did not properly consider his side effects when making his credibility determination is also unavailing.  The ALJ properly considered Plaintiff's alleged side effects throughout his decision.  As discussed above, Plaintiff did not allege any side effects from Prednisone and Methotrexate (his then-current medications) for the ALJ to consider.  TR 44.  With regard to Plaintiff's alleged side effects from Imuran, as recounted above, the ALJ specifically asked Plaintiff about his side effects from Imuran.  TR 42-43.

Additionally, the ALJ explicitly addressed Plaintiff's migraine headaches and basal cell carcinoma:

The medical records also state that the claimant has a history of

22

> basal cell carcinoma on his scalp that required surgical excision.
> Exhibit 6F.  The claimant stated that this condition only limits his
> ability to work when he is required to miss work to get treatment.
> The claimant indicated that he usually gets treatment
> approximately every 6 months.  However, the claimant's need for
> treatment is not frequent enough to cause a work-related
> limitation.  In addition, there is no medical evidence that this
> condition is chronic.  Additionally, the claimant mentioned he has
> had migraine headaches.  Exhibit 6F.  The claimant stated that the
> headaches tend to come and go, but they have not been bad lately.
> Therefore, the undersigned finds the claimant's basal cell
> carcinoma and migraine headaches are non-severe.

TR 19-20, *referencing* TR 41-42, 219.

As can be seen, the ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered.  TR 21-22.  It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations.  This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination.  *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).  An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility.  *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters,* 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler,*

742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all of the objective medical evidence and Plaintiff's testimony, the ALJ determined that Plaintiff's condition was well-controlled by medication, and that, accordingly, Plaintiff was only partially credible with regard to the intensity, persistence, and limiting effects of his alleged symptoms. TR 21-22.

The ALJ observed Plaintiff during his hearing, assessed the medical records, reached a reasoned decision, and articulated the basis for that decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 5. Residual Functional Capacity

Plaintiff maintains that the ALJ made a flawed RFC finding by erroneously assigning weight to a single phrase in Dr. Price's treatment notes. Docket No. 16. Specifically, Plaintiff contends that the ALJ misconstrued the record in finding that he sought to supplant his treating physician's regimen with a holistic approach. *Id.* Plaintiff further argues that the ALJ erred in failing to consider his side effects when making his RFC finding. *Id.* Specifically, Plaintiff argues that if the ALJ had properly considered the factors in SSR 96-8p, he would have formulated a more accurate RFC finding. *Id.*

Defendant does not respond directly to Plaintiff's allegations of error relating to the ALJ's RFC finding. Docket No. 19. As discussed above, however, Defendant has repeatedly

contended that the ALJ did not make a finding that Plaintiff was noncompliant with treatment and that Plaintiff did not indicate any side effects from Prednisone or Methotrexate that the ALJ should have considered. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

As has been demonstrated above, the ALJ did not hold Plaintiff's discontinued use of Imuran against him in his ultimate RFC finding. TR 22. Although the ALJ noted that the medical records indicated that Plaintiff had "decided to take a holistic approach to self-care and had been getting some supplements from a nutritionist therapist and he decided to discontinue his Imuran," the ALJ, when determining Plaintiff's RFC, did not assign weight to a single phrase in Dr. Price's treatment notes. TR 20, *referencing* 221. Dr. Price's medical notes from August 30, 2010 explicitly state:

> **Reason(s) for visit**
> . . . He apparently decided that [*sic*] a "holistic" approach to self-care and has been getting some supplements from some nutritional therapist in Franklin. Unfortunately he decided to discontinue his

25

Imuran and Pentase. Started on prednisone on the 16th and is better. . . .

. . .

**Assessment Plan**

**Regional enteritis of large intestine (555.1)**

Patient has had a flare of his disease. Unfortunately he has discontinued a very successful maintenance drug when he decided to stop his Imuran. We can get this flare control [*sic*] with steroids but I think we will need to find a better maintenance drug. He is [*sic*] holistic treatments are dubious.

TR 221.

The ALJ summarized Dr. Price's notes from this date, as follows:

> . . . [O]n August 30, 2010, the claimant reported that he had a flare up of his Crohn's disease. Dr. Neil Price, the treating physician at the Nashville Medical Group, noted during the office visit that the claimant had decided to take a holistic approach to self-care and had been getting some supplements from a nutritionist therapist and he decided to discontinue his Imuran. Dr. Price indicated that he could get the flare controlled with steroids, but a better maintenance drug was needed. Dr. Price added that the holistic treatments are "dubious.". . .

TR 20, *referencing* TR 221.

As can be seen, the ALJ's summary of Dr. Price's opinion is fully consistent with Dr. Price's notes. Regardless, as previously discussed, the ALJ did not base his RFC assessment on Plaintiff's discontinuation of Imuran, or hold that discontinuation against him. Accordingly, Plaintiff's argument is unavailing.

With regard to Plaintiff's argument that the ALJ did not consider his medication side effects when determining his RFC, Plaintiff correctly notes that SSR 96-8p requires the RFC

26

assessment be based on all relevant evidence, including "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Plaintiff neglects, however, to consider the duration of his alleged side effects from Imuran. Specifically, SSR 82-52 states that "[t]o be found disabled, an individual must be unable to engage in any substantial gainful activity (SGA) by reason of a medically determinable physical or mental impairment(s) . . . which has lasted or can be expected to last for a continuous period of at least 12 months." SSR 82-52. In the instant case, Plaintiff experienced side effects from Imuran for only two months after his alleged disability onset date, and testified that he experienced no side effects from Prednisone and Methotrexate, his then-current medication. Plaintiff's reported side effects, thus, fall significantly short of the requisite twelve months.

The ALJ, after evaluating all of the objective medical evidence of record, Plaintiff's subjective complaints, and Plaintiff's reported level of activity, determined that Plaintiff retained the RFC to perform jobs that exist in significant numbers in the local and national economies, including janitor positions, hotel cleaner positions, and auditing control clerk. TR 23. The ALJ properly evaluated the evidence and appropriately rendered an RFC determination. Plaintiff's arguments on this point fail.

**6.  New and Material Evidence**

Plaintiff argues that the letter from Dr. Neil Price dated July 19, 2011 and the medical records from Dr. Pennington constitute new and material evidence that should have been considered, and that, accordingly, the ALJ's decision should be reversed, or in the alternative, remanded pursuant to Sentence Six of 42 U.S.C. § 405(g) to consider the new evidence

submitted to the Appeals Council. *Id.* Specifically, Plaintiff contends that Dr. Price's letter clarifies Plaintiff's physical limitations imposed by his Crohn's disease, as they relate to his ability to timely report for work and his need for "unlimited bathroom privileges." *Id.* at 17. Plaintiff also contends that Dr. Pennington's records illustrate "the deleterious side effects of Imuran and the long term health implications for Mr. McDonough resulting from those treatments." *Id.* at 18.

Defendant responds that Plaintiff has failed to show how the letter is "new and material" evidence. Docket No. 19. With regard to Dr. Price's letter, Defendant maintains that Dr. Price had been treating Plaintiff "for the last fifteen years," and that accordingly, this letter cannot constitute "new evidence" because it was available to Plaintiff at the time of the hearing. *Id.* at 18. Defendant contends that the similar letters written by Dr. Price, dated November 16, 2010 and February 22, 2011, evidence that Dr. Price's opinion was available at the time of the hearing. Docket No. 19. Defendant further argues that Plaintiff has failed to demonstrate that the information in the letter meets the definition of "material evidence." *Id.* Specifically, Defendant argues that the letter discusses Plaintiff's physical limitations, which the ALJ had already considered, and their *potential*, but not actual, impact on his ability to work. *Id.* With regard to the additional medical evidence, Defendant maintains that the potential that "greater impact exists would not change the ALJ's decision because his decision was based on the impact the medical record then substantiated, as required." *Id.* at 19.

As an initial matter, Plaintiff submitted to the Appeals Council letters dated July 19, 2011 and July 26, 2011, from Dr. Price, when he submitted his request for reconsideration of the ALJ's unfavorable decision. TR 204, 312-13. On December 15, 2011, Plaintiff submitted to the

28

Appeals Council supplemental medical records from Nashville Skin and Cancer, dated July 6, 2007 to December 6, 2011.  TR 314-57.  On December 16, 2011, Plaintiff submitted a supplemental dermatopathology report from Nashville Skin and Cancer.  TR 358-59.  On March 2, 2012, Plaintiff also submitted a letter from his physician at Nashville Skin and Cancer, Dr. Brent Pennington, dated January 26, 2012.  TR 360.

On May 30, 2012, the Appeals Council issued a letter denying Plaintiff's request for review of the ALJ's decision.  TR 1-6.  The Appeals Council's letter also specifically stated as follows:

> In looking at your case, we considered the reasons you disagree with the decision *and the additional evidence* listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

TR 1-2 (emphasis added).

The Regulations provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated and review granted where the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence.  20 C.F.R. § 416.1470.  After reviewing the letters from Dr. Price, the medical records from Dr. Pennington, the letter from Dr. Pennington, the supplemental dermatopathology report, and the record as a whole, the Appeals Council determined that there was no basis under the Regulations for granting Plaintiff's review.  TR 1-2.

Remand for consideration of new and material evidence is appropriate only when the

29

claimant shows that: (1) new material evidence is available; *and* (2) there is good cause for the failure to incorporate such evidence into the prior proceeding. *Willis v. Secretary*, 727 F.2d 551, 554 (6th Cir. 1984). Plaintiff can show neither.

First, Plaintiff cannot establish that the additional materials, and more specifically, Dr. Price's July 19, 2011 letter and Dr. Pennington's medical records, are material. "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir. 1988) (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). Plaintiff has failed to satisfy this burden. The ALJ considered extensive medical records from Dr. Price in reaching his decision. TR 20-22. The ALJ also explicitly considered medical records concerning Plaintiff's basal cell carcinoma. TR 19-20. The letter from Dr. Price and the medical records from Dr. Pennington submitted after the ALJ's decision do not contain significantly different findings than the medical records considered by the ALJ. Rather, they essentially restate the opinions the ALJ had previously incorporated into his decision. Specifically, Dr. Price's July 19, 2011 letter contains substantially the same information regarding Plaintiff's Crohn's disease as does Dr. Price's February 22, 2011 letter, considered by the ALJ. *See* TR 311-12. Similarly, the information regarding Plaintiff's basal cell carcinoma in Dr. Pennington's records is significantly recounted in the records from Nashville Medical Group, which were accorded great weight by the ALJ. TR 219, 227-28, 232, 234. Furthermore, both Dr. Price's July 19, 2011 letter and Dr. Pennington's January 26, 2012 letter emphasize the *potential* impact of Plaintiff's Crohn's disease and basal cell carcinoma on his ability to work. TR 312, 360. The

30

ALJ is required to make his decision based on the *actual* impact substantiated by the medical record as it then stood, not on the impact of Plaintiff's hypothetical future condition.

Even if Dr. Price's letter and Dr. Pennington's records had been part of the record before the ALJ, as noted, they essentially reiterate evidence before the ALJ at the time of his decision, and "substantial evidence" supports the ALJ's findings and inferences. The ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and VE Rebecca Williams, observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision. Additionally, the Appeals Council reviewed the additional submissions, including Dr. Price's July 19, 2011 letter and Dr. Pennington's medical records, as well as the record as a whole, and expressly determined that the information in the additional submissions did not warrant changing the ALJ's decision. TR 1-2. Thus, there is no "reasonable probability that the Secretary would have reached a different disposition of the disability claim" if Dr. Price's letter and Dr. Pennington's medical records had been part of the record before the ALJ.

Because Plaintiff has failed to demonstrate that the "new" medical evidence was material, it is immaterial whether he had good cause for the failure to incorporate that evidence into the prior proceeding, as remand pursuant to Sentence Six of 42 U.S.C. § 405(g) requires satisfaction of both factors. Accordingly, remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not warranted.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

31

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge